## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CompCare de Puerto Rico, Inc.**<br><br>**Plaintiff**<br><br>**vs.**<br><br>**Santa Cruz Behavioral Group; Dr. William Julio; Dr. Sylma Batista; Dr. Iván Chicowicz; Dr. Lydia Lázaro; Dr. Marie Rodríguez; Dr. Zuleika Rosado; Dr. Pedro Oyola Nieves; Dr. Rubén Bravo Valverde; John Doe A, John Doe B, John Doe C, Corporations D, E and F; Insurance Companies X, Y and Z**<br><br>**Defendants** | **CASE NO. 10-1950**<br><br>**RE: UNREASONABLE RESTRAIN OF TRADE: GROUP BOYCOTT; PRICE FIXING; TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS; MEDICARE LAW VIOLATION; PRELIMINARY AND PERMANENT INJUNCTION**<br><br>**PLAINTIFF DEMANDS TRIAL BY JURY** |

## <u>VERIFIED COMPLAINT</u>

**TO THE HONORABLE COURT:**

      **COMES NOW** Plaintiff, CompCare de Puerto Rico, Inc. ("CompCare"), through the undersigned counsel, and very respectfully alleges and prays as follows:

### I. NATURE OF THE ACTION, JURISDICTION AND VENUE

      1.    This action seeks injunctive relief and a temporary restraining order, pursuant to Fed. R. Civ. P. 65, against the unlawful conduct of a medical group and of individual psychiatrists and psychologists in their personal capacity (jointly, "the providers"), for violations to Sections 1851 and 1852 of the Social Security Act (42 U.S.C. § 1395w-21, w-22), Section 422.2268 of Title 42 of the Code of Federal Regulations, Center for Medicare and Medicaid Services ("CMS") Marketing Guidance, as amended, and Article 7 of Act No. 194 of August 25, 2000 (P.R. Stat. Ann. T. 24 § 3045).

2.      It is further alleged that defendants have incurred in illegal practices and collusion tantamount to a conspiracy to restrain trade through a boycott to a) deny medical care to mental health patients; b) force said patients to switch health care plans; c) extract higher fees collectively through collusion; and d) limit choice to members of the health plan offered by MMM Healthcare, Inc. and PMC Medicare Choice, Inc. (collectively, "MMM") serviced by CompCare and to the general Medicare population. All this in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Arts. 2 and 4 of Act. No. 77 of July 25, 1964, as amended, 10 L.P.R.A. §§ 258 and 260, also known as the Puerto Rico Anti-Trust Act.

3.      This Court has original jurisdiction over the case's subject matter pursuant to 28 U.S.C. § 1331, insofar as this action seeks to redress ongoing violations of Section 1 of the Sherman Act, 15 U.S.C. §1, and violations to Sections 1851 and 1852 of the Social Security Act (42 U.S.C. § 1395w-21, w-22), Section 422.2268 of Title 42 of the Code of Federal Regulations and CMS Marketing Guidance, as amended.  This Court also has subject matter jurisdiction over the pendant state law claims pursuant to 28 U.S.C. § 1367.  This action is also a request for declaratory judgment pursuant to F.R. Civ. P. 57 and 28 U.S.C. § 2201.

4.      Venue is proper in this district under 28 U.S.C. §1391 because the events that gave rise to the claims occurred in this judicial district. CompCare brings this action for equitable and other relief against co-defendants to:

(a)      restrain co-defendants from their ongoing group boycott activities in violation of Section 1 of the Sherman Act, 15 U.S.C. §1 and the Laws of Puerto Rico, 10 L.P.R.A. § 257 et seq.;

(b)     restrain co-defendants from infringing Medicare laws and regulations regarding services to patients in a Medicare Advantage plan and the improper and illegal marketing of Medicare Advantage Organizations,

(c)     enjoin co-defendants from tortuously interfering with CompCare's contracts with: i) outpatient mental health and substance abuse services providers and other service providers: and ii) MMM Healthcare, Inc. and PMC Medicare Choice, Inc., and

(d)     request compensation for damages.

## II. PARTIES

5.      Plaintiff, CompCare de Puerto Rico, Inc. ("CompCare") is a corporation organized under the laws of Puerto Rico.  CompCare is a Managed Behavioral Healthcare Organization ("MBHO") that services the  benefit plan for health and substance abuse services for the Medicare and Medicaid plan members of MMM Healthcare, Inc. and its corporate affiliate, PMC Medicare Choice, Inc. (collectively, "MMM").  CompCare's address is Parkside Plaza, Metro Office Park 14 Street, Suite 405, Guaynabo, Puerto Rico 00968.  Phone: (787) 522-4400 x 5073, Fax (813) 637-4614.

6.      Defendant, Santa Cruz Behavioral P.S.C. ("Santa Cruz Behavioral") is through information and belief a professional services organization providing psychiatric and psychological services to patients.  The group is composed by six doctors, to wit: Dr. William Julio, Dr. Sylma Batista, Dr. Iván Chicowicz, Dr. Lydia Lázaro, Dr. Marie Rodríguez and Dr. Zuleika Rosario.  Santa Cruz Behavioral's address is: Edificio Médico, Santa Cruz #73, Oficina 212, Bayamón, PR 00961; PO Box 8129, Bayamón, Puerto Rico 00960-8129. Phone: (787) 798-4592/ 8237. Fax (787) 798-8236.

7.      Defendant, Dr. William Julio is a licensed psychiatrist and a member of Santa Cruz Behavioral.  Dr. Julio's address is the same as that of Santa Cruz Behavioral.

8.      Defendant, Dr. Sylma Batista is a licensed psychiatrist and a member of Santa Cruz Behavioral.  Dr. Batista's address is the same as that of Santa Cruz Behavioral.

9.      Defendant, Dr. Iván Chicowicz is a licensed psychiatrist and a member of Santa Cruz Behavioral.  Dr. Chicowicz's address is the same as that of Santa Cruz Behavioral.

10.      Defendant, Dr. Lydia Lázaro is a licensed psychologist and a member of Santa Cruz Behavioral.  Dr. Lázaro's address is the same as that of Santa Cruz Behavioral.

11.      Defendant, Dr. Marie Rodríguez is a licensed psychologist and a member of Santa Cruz Behavioral.  Dr. Rodríguez's address is the same as that of Santa Cruz Behavioral.

12.      Defendant, Dr. Zuleika Rosado is a licensed professional and is a member of Santa Cruz Behavioral.  Dr. Rosado's address is the same as that of Santa Cruz Behavioral.

13.      Defendant, Pedro Oyola Nieves is a licensed psychiatrist.  Dr. Oyola's address is 73 Santa Cruz, Suite 416, Bayamón, Puerto Rico, 00961.  His phone number is (787) 786-7460.

14.      Defendant, Rubén Bravo Valverde is a licensed psychiatrist.  Dr. Bravo's address is Metro Medical Center, 195, Carr. #2, Suite 1209, Bayamón, PR 00959.  His phone number is (787) 786-0575 and his fax number is (787) 787.0412.

15.      Co-defendants John Does A, B, C are unknown licensed psychiatrists and/or psychologists that are or could be liable for the allegations of the instant complaint.

16.      Co-defendants D, E, F are unknown corporations that are or could be liable for the allegations of the instant complaint.

17.      Co-defendants X, Y, Z are unknown insurance carriers that provide coverage for the allegations and causes of action herein included.

### III. FACTS COMMON TO ALL CAUSES OF ACTION

18.     On August 13, 2010, CompCare entered into a two-year contract with MMM two affiliated Medicare Advantage health plans serving approximately 185,000 members in Puerto Rico to provide mental health and substance abuse and certain pharmacy services on a capitated basis to individuals covered by MMM's Medicare Advantage and Medicaid (Platino) healthcare benefit plans, hereinafter "the Contract".  The contract became effective on September 18, 2010. See, **Exhibit 1.**

19.     MMM are authorized insurance companies who have entered into "Medicare Advantage" contracts with CMS to provide healthcare coverage and prescription psychotropic drug coverage to eligible Medicare and Medicaid (Platino) beneficiaries in Puerto Rico.

20.     According to Section 3.1 of the Contract, CompCare "shall perform Delegated Functions" in accordance with the terms of the Contract.  Through those Delegated Functions, MMM gave or delegated to CompCare the partial or full authority to perform certain functions and regulatory obligations on its behalf, such as administration and management, marketing, utilization management, quality assurance and disenrollment functions, claims processing, adjudicating Medicare organization determinations appeals and grievances, and credentialing. See, **Exhibit 1.**

21.     Medicare Advantage is a coordinated managed care option that offers alternatives to Medicare beneficiaries in the manner in which they receive Medicare benefits.  It is an alternative to original Medicare (fee-for-service) established more than 35 years ago that offers Medicare members additional benefits to those offered by original Medicare.

22.      Through the Contract, CompCare became responsible for, among others, establishing, maintaining and administering a network of healthcare providers to provide mental health and substance abuse services that are covered under a member's benefit plan.

23.      In accordance with Medicare rules and regulations, the Contract also establishes that CompCare would transition mental health and substance abuse services commenced prior to September 18, 2010 for the lesser of the time necessary to complete treatment or ninety (90) days from the effective date of the Contract. See, Article 4.1 of **Exhibit 1.**

24.      In order to fully comply with its obligations under the Contract and CMS rules and regulations pursuant to the terms delegated thereto, CompCare entered into an agreement with FHCHS PR, Inc. ("FHC") to obtain access to its island wide network of healthcare providers in Puerto Rico, who are either employed with FHC or with which FHC has contracts to provide health care services.

25.      The agreement establishes, among others, that FHC's network of providers shall be available 24 hours per day, 7 days per week to provide access for services to Members' request for Health Care Services.

26.      Since August 18, 2010, CompCare began an informational campaign in which CompCare illustrated the new method of authorization, billing and compensation of outpatient mental health and substance abuse services.  See, **Exhibit 2.**

27.      As CompCare began meeting with outpatient mental health and substance abuse service providers to explain their new model, co-defendants gathered among themselves and with other mental health and substance abuse providers to consider the advantages and

disadvantages of becoming part of CompCare's mental health and substance abuse provider network.

28.   On August 23, 2010, co-defendant Pedro Oyola Nieves sent a letter to all his patients informing them that effective September 18, 2010, he would no longer provide services to MMM Medicare Advantage plan members.  See, **Exhibit 3.**

29.   On September 9, 2010, Santa Cruz Behavioral, comprised of its six members, co-defendants Drs. Julio, Batista, Cichowicz, Lázaro, Rodríguez and Rosario, sent a letter to FHC's CEO, Mr. José Luis Pi not only expressly refusing to provide MMM members service effective immediately but favoring another specific managed care provider over CompCare.  They also stated "our proposal is that you match in 100% the Medicare reimbursement rate and give us an additional 15% over such rate". See, **Exhibit 4.**

30.   On September 21, 2010, Marisel Viera Figueroa, Provider Services Manager of CompCare, was informed by the administrator of Santa Cruz Behavioral, Ms. Ivelisse Rojas that they were in fact contacting patients of the medical group and suggesting to them to switch from MMM to another specific Medicare Advantage health plan in complete disregard to the patients well being and medical needs.  In addition, they stated that unless CompCare offered to match the Medicare reimbursement fees, they would not meet with anyone from CompCare.

31.   On September 22, 2010, Orlando González of MMM referred the September 9, 2010 letter to the attention of the President of CompCare. Ms. Remedios Rodríguez ("Ms. Rodríguez").  See, **Exhibit 5.**

32.   Upon the receipt of the letter, despite the numerous violations of Medicare laws and regulations, to the Patient's Bill of Rights, as well as violation of antitrust and breach of third

party contract, Ms. Rodríguez undertook the task of contacting as many psychiatrists as she could to discuss their demands in an effort to salvage the rights of the patients that would eventually be affected with co-defendants' refusal to provide MMM members their due and medically necessary service.

33.      Ms. Rodríguez contacted Santa Cruz Behavioral and was told that unless CompCare paid 100% of Medicare, they would continue to refuse service to MMM members, steer them to other Medicare Advantage plans and would not meet with CompCare.

34.      Upon information and belief co-defendant, Dr. Bravo has been the mastermind of the boycott and disparaging campaign against CompCare and MMM, in clear disregard of Medicare rule and regulations.

35.      Dr. Bravo verbalized that he was calling all the psychiatrists in the island and that they were agreeing with him and that they would not contract with CompCare or continue to provide services to MMM patients, unless their conditions were met.

36.      Upon information and belief, Dr. Bravo contacted his patients and urged them to switch from MMM to another Medicare Advantage Health Plan falsely alleging that MMM only covered three (3) psychiatric visits per year and that their social security benefits including Medicare, were at risk of being lost through CompCare.

37.      Upon information and belief, during the evening of Thursday, September 23, 2010, co-defendant Dr. Bravo gathered all psychiatrists he could in a meeting in his offices, to discuss their refusal to provide MMM members the service through CompCare and to boycott said CompCare.

38.     Ms. Rodríguez was informed of the meeting of September 23, 2010, by a psychiatrist who was invited and would be in attendance.  Ms. Rodríguez was asked to be near the premises on standby in the event that she be invited to join the meeting.  She received a phone call from Dr. Bravo telling her that the psychiatrists would not meet with her.

39.     Rodríguez attempted to meet on Friday, September 24, 2010, and Saturday, September 25, 2010, via telephone conference with Dr. Bravo, who refused to engage in further negotiations stating that "psychiatrists are no longer puppets".

40.     During a telephone conference held on September 27, 2010, Dr. Bravo told Ms. Rodríguez that he had been in contact with Dr. Edgardo Ortiz, the President of the Puerto Rico Institute of Psychiatry, a nonprofit private institution, located in San Juan, Puerto Rico, with an enrollment of approximately 30 members in a program leading to a professional psychiatry certificate, and that Dr. Ortíz, "had joined his efforts". Dr. Bravo also indicated that "psychiatrists in the Fajardo and Humaco area had also joined the efforts".

41.     Upon information and belief, co-defendants have been harassing and admonishing other island psychiatrist and psychologists to prevent them from becoming part of CompCare's network and to induce them to breach their obligations as providers of MMM Medicare Advantage programs.

42.     On September 27, 2010, the undersigned attorneys sent several letters via fax and messenger service to co-defendants requesting confirmation that co-defendants would cease and desist from interfering with CompCare's business. See, **Exhibit 6.** Not one of the co-defendants notified their intention to cease and desist from their illegal conduct.

43.     As a result of these actions, CompCare contracted psychiatrists and psychologists have ceased to provide services to MMM Medicare Advantage plan members in clear violation of applicable laws and regulations and placing these patients at risk, this is especially acute since many have severe and persistent mental health and substance abuse conditions.

44.     Defendant's actions are not only anticompetitive but in detriment of CompCare's ability to offer a comprehensive, efficient and readily accessible network that meets Medicare access requirements in terms of the number of psychiatrists and psychologists needed to meet patient demand and in terms of the number of service providers, their location and proximity to MMM's members.  These actions threaten CompCare's compliance with these standards.

45.     Upon information and belief, there are approximately 350 psychiatrists in Puerto Rico, of which 79 currently service MMM.  Further, as of 2007 there were 1,599 psychologists, of which 424 service MMM.     Additionally, there are approximately 185,000 Medicare beneficiaries who are also members of MMM and which receive services through the network of providers provided by CompCare.  The providers compete within a market for the provision of these services in Puerto Rico ("the Relevant Market") or in some geographic portion thereof ("Relevant Submarkets").  These Relevant Submarkets would depend on the geographical area in which each provider provides its services.  They account for a substantial portion of the outpatient mental health and substance abuse services providers that could be participating in CompCare's Network and, thus, acting together, they have the ability to exercise market power and increase prices above (or reduce output below) otherwise prevailing competitive levels to the detriment of CompCare, MMM and its individual members (i.e., the ultimate consumers of outpatient mental health and substance abuse services).

46.     Co-defendants and other psychiatrists and psychologists who are participating in the unlawful agreement to restrain trade as alleged herein, have acted and are acting in their own respective economic self-interest, in complete disregard of the interest of Medicare beneficiaries well being with the improper purpose and effect of fixing prices and limiting choice or increasing them above competitive levels or, above levels they otherwise would receive for the provision of psychiatric services in the Relevant Market or Relevant Submarket (s).

47.     Defendant's conduct is causing or is threatening to cause harm to competition, including increased prices for, and reduced output of, outpatient psychiatric and psychological services by:

(a)     reducing or eliminating price competition among independent outpatient mental health and substance abuse service providers;

(b)     interfering with or eliminating individual contracting between outpatient mental health and substance abuse service providers and Managed Behavioral Healthcare Organizations ("MBHO's") such as CompCare;

(c)     eliminating the availability of Medicare Advantage benefits and services available to members;

(d)     depriving CompCare's of its ability to offer viable outpatient services in competition with other MBHO's and providers of mental health and substance abuse services (in terms of the number and location of providers from which MMM members can choose from); and

(e)     reducing or eliminating the choices available to MMM members, in terms of the number and location of providers from which they can obtain outpatient mental health and substance abuse services with the results, in some instances, or disrupting longstanding

relationships between elderly members and behavioral health service providers and forcing members to locate and travel more distances to obtain these services.

48.    Defendants' anticompetitive conduct and agreements, including co-defendants' and other psychiatrists and psychologists collective withdrawal from becoming part of CompCare's network, also:

(a)    interferes with CompCare's existing contractual relations with MMM;

(b)    interferes with CompCare's existing contractual relations with outpatient behavioral health providers and other service providers;

(c)    deprives CompCare and MMM of the ability to compete effectively with other MBHO's health plans, and insurance companies for new members;

(d)    deprives MMM members accessing viable or sufficient outpatient behavioral health service providers (in terms of numbers and location);

(e)    diminishes the positive reputation and goodwill that CompCare and MMM have built as a result of its provision of health plan services; and

(f)    causes immediate harm to CompCare in its business and property.

49.    The activities of co-defendants that are the subject of this complaint are within the flow of, and have substantially affected, interstate trade and commerce.

50.    A portion of the costs of the MMM health plan is allocated to the coverage of prescription psychotropic drugs.  Most of those medications are manufactured outside of the jurisdiction of Puerto Rico and, hence, affect the interstate commerce.

51.    To provide their services, co-defendants and plaintiffs have also purchased equipment and supplies that were shipped across state lines. Further, the funds used to pay the services provided come from federal funds administered through the Medicare Program.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### PER SE UNLAWFUL PRICE-FIXING AND GROUP BOYCOTT ACTIVITIES IN RESTRAINT OF TRADE IN VIOLATION OF SECTION 1 OF THE SHERMAN ACT
### 15 U.S.C. § 1

52.     CompCare hereby incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein.

53.     At least since August 23, 2010 and continuously until today, co-defendants have engaged in per se unlawful collusion, conspiracies, combinations, price-fixing agreements and group boycott activities in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 by collectively refusing to provide services to MMM Medicare Advantage plan members

54.     One or more co-defendants compete with one another as horizontal competitors in the provision of outpatient mental health and substance abuse services in the Relevant Market or Relevant Submarkets.

55.     The purpose and effect of the agreements entered by co-defendants and other psychiatrists and psychologists has been to pool their respective economic self-interests with the improper purpose and effect of fixing prices or increasing them above competitive levels or, above levels they otherwise would receive for the provision of outpatient mental health and substance abuse services in the Relevant Market of Relevant Submarkets.

56.     Co-defendants have engaged in per se illegal group boycott by collectively refusing to deal with CompCare except upon jointly determined terms.

57.     Co-defendants' anticompetitive conduct and agreements as alleged herein, including their collective withdraw and/or refusal to enter to CompCare's network, hinders

CompCare and MMM in their competition with other MBHO's, health plans and insurance companies because it reduces or eliminates CompCare's ability to provide its customers and MMM members (approximately 185,000 persons) with access to a sufficient outpatient behavioral health services providers as necessary to satisfy existing contractual obligations; to attract new customers; to meet the access standards established by CMS for Medicare Advantage products; and to maintain their reputation for the provision of health plan and insurance products that include a comprehensive network of behavioral health services.

58.     By reason of such unlawful conduct, CompCare has been and will continue to be injured in its business and property and therefore is entitled to recover threefold such damages as it is found to have sustained, injunctive relief, and its costs of suit and reasonable attorneys' fees, pursuant to Section 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

## SECOND CAUSE OF ACTION
## PER SE UNLAWFUL PRICE-FIXING AND GROUP BOYCOTT ACTIVITIES IN RESTRAINT OF TRADE IN VIOLATION OF THE PUERTO RICAN ANTRITRUST ACT 10 L.P.R.A. §§ 257 et seq.

59.     CompCare hereby incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein.

60.     At least since August 23, 2010 and continuously until today, co-defendants have engaged in per se unlawful collusion, conspiracies, combinations and price-fixing group boycott activities in restraint of trade in violation of 10 L.P.R.A. §§ 257 et seq.

61.     One or more co-defendants compete with one another as horizontal competitors in the provision of outpatient mental health and substance abuse services in the Relevant Market or Relevant Submarkets.

62.    The purpose and effect of the agreements entered by and between co-defendants and other psychiatrists and psychologists has been to pool their respective economic self-interests with the improper purpose and effect or fixing prices or increasing them above competitive levels or, above levels they otherwise would receive for the provision of outpatient mental health and substance abuse services in the Relevant Market or Relevant Submarket.

63.    Co-defendants have engaged in per se illegal group boycott by collectively refusing to deal with CompCare except upon jointly determined terms. There is no plausible argument that co-defendants' actions have enhanced overall efficiency or competition in the Relevant Market or any Relevant Submarket(s).

64.    Co-defendants' anticompetitive conduct and agreements, including its collective refusal to enter and/or withdrawal from CompCare's network, hinders CompCare and MMM in its competition with other MBHO's, health plans and insurance companies because it reduces or eliminates CompCare's ability to provide its customers and MMM members with access to a sufficient outpatient behavioral health providers as necessary to satisfy existing contractual obligations; to attract new customers: to meet the access standards established by CMS for Medicare Advantage products, and to maintain their reputation for the provision of health plan and insurance products that include a comprehensive network of behavioral health services.

65.    By reason of such unlawful conduct, CompCare has been and will continue to be injured in its business and property and therefore is entitled to recover threefold such damages as it is found to have sustained, injunctive relief, and its costs of suit and reasonable attorneys' fees, pursuant to 10 L.P.R.A. §§ 268, 269a.

## THIRD CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

66.    CompCare hereby incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein.

67.    The interference co-defendants, including individual defendants, has sought to induce termination of CompCare's contractual relationships with MMM and with any service provider, including, participants in CompCare's network.

68.    At all relevant times, CompCare has had and continues to have contractual relationships with MMM and behavioral health provider participants in CompCare's network and has a valid economic expectancy related to those contracts.  Co-defendants have had knowledge of CompCare's valid economic expectancy with respect to MMM and provider participants in CompCare's network.

69.    Co-defendants, including individual defendants, have sought to interfere with CompCare's valid contracts by inducing individual outpatient behavioral health services participants to withdraw from participating in CompCare's network and informing MMM's members that they will no longer provide outpatient mental health and substance abuse services since at least August 23, 2010.

70.    The interference of co-defendants, including individual defendants, has been wrongful.  The interference was intentionally and maliciously designed for the improper purpose of excluding competition and constitutes price fixing and group boycott.

71.    By reason of such tortuous conduct, CompCare has suffered and will continue to suffer irreparable injury unless co-defendants are s enjoined from engaging in such unlawful

behavior.  CompCare also has and will suffer economic and consequential damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## CONTRACT IN HARM OF THIRD PARTIES

72.     CompCare hereby incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein.

73.     Co-defendants, including individual defendants, have sought to induce termination of CompCare's contractual relationships with MMM and with participating providers in CompCare's network.

74.     CompCare has and continues to have contractual relationships with MMM and with participating providers in CompCare's network, and a valid economic expectancy related to those contracts.

75.     Co-defendants, including individual defendants, have had knowledge of CompCare's valid economic expectancy with these contracts.

76.     Co-defendants, including individual defendants, have sought to interfere with CompCare's valid contracts and economic expectancy by inducing individual outpatient behavioral health services to withdraw from participating in CompCare's network and by informing MMM's members that they will no longer provide outpatient behavioral services and inducing MMM members to move to other health plans since at least August 23, 2010.

77.     The agreement entered by and between co-defendants through which they jointly decide not to deal with or enter into contract with CompCare is wrongful.  It was intentionally and maliciously designed for the improper purpose of excluding competition and constitutes price fixing and group boycott.

78.     By reason of such tortuous conduct, CompCare has suffered and will continue to suffer irreparable injury unless co-defendants, including individual defendants, are enjoined from engaging in such unlawful behavior. CompCare also has and will suffer economic and consequential damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
## UNDER SECTION 1852 OF THE SOCIAL SECURITY ACT

79.     CompCare hereby incorporates by reference the foregoing paragraphs of this Complaint as if set forth herein.

80.     Co-defendants have been actively discriminating against Medicare beneficiaries that are MMM members, by refusing to provide services to those patients.

81.     Co-defendants' refusal to provide services to patients that are MMM members is preventing CompCare from complying with Medicare regulations regarding the provision of services to beneficiaries. Failure to comply with those regulations could result in severe sanctions from CMS.

## SIXTH CAUSE OF ACTION
## UNDER SECTION 1851 OF THE SOCIAL SECURITY ACT

82.     Co-defendants have engaged in active marketing and promoting practices in favor of specific Medicare Advantage Organizations and against and to the exclusion of CompCare.

83.     Co-defendants have engaged in unlawful and inappropriate marketing practices in healthcare settings.

84.     Co-defendants have expressly disseminated negative statements about CompCare and have threatened patients that are plaintiff's beneficiaries with the loss of their benefits.

## SEVENTH CAUSE OF ACTION
## TORT UNDER THE PUERTO RICO'S ARTICLE 1802 OF THE CIVIL CODE

85.     CompCare hereby incorporates by reference the foregoing paragraphs of this Complaint as if set forth therein.

86.     The unlawful acts and practices alleged above are intentional and negligent and have caused injury to CompCare.

87.     Co-defendants are, therefore, liable to CompCare for damages under Article 1802 of the Puerto Rico Civil Code 31 L.P.R.A. § 5141.


## V. PRAYER FOR RELIEF

**WHEREFORE**, CompCare requests that this Court enter judgment in its favor and grant the following relief:

A.     Enter a Temporary Restraining Order and grant a Preliminary and Permanent Injunction enjoining co-defendants, and all other parties known or unknown, acting or claiming to act in active concert or participation with one or more of them, from:

(i)     representing its members during negotiations or any contractual relation with CompCare;

(ii)     setting price or any other terms on which co-defendants will provide services to CompCare;

(iii)     demanding that CompCare pay higher rates for outpatient mental health and substance abuse services;

(iv)     refusing to contract independently with CompCare;

(v)     refusing to deal with CompCare unless and until their collective demands are met;

(vi)     tortuously interfering with CompCare's business relations and/or contracts with: a) outpatient mental health and substance abuse and other service providers; b) with insurance companies, such as, MMM Healthcare, Inc. and PMC Medicare Choice, Inc.;

(vii)    threatening outpatient mental health and substance abuse service providers or other providers, if they become members of CompCare's network;

(viii)   inducing service providers, including, mental health and substance abuse service providers in CompCare's network to breach their obligations toward CompCare;

(ix)     unilaterally interrupting the mental health services that are to be provided by professionals under plaintiff's network of healthcare providers; and

(x)      marketing and promoting one or more health plans over the others.

B.       Order co-defendants and all other unknown persons acting or claiming to act in active concert of participation with one or more of them, not to renew the conduct alleged herein or engage in any other conduct having the same effect as the alleged violations or that otherwise restrain trade among service providers in violation of the antitrust laws.

C.       Award CompCare three times its actual damages, plus compensatory and punitive damages, attorney's fees, and costs; and

D.       Grant such further and other relief as the Court deems just and proper.

**RESPECTUFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 1st day of October, 2010.

s/PEDRO SANTIAGO RIVERA
USDC-PR – 216105

s/BEATRIZ ANNEXY GUEVARA
USDC-PR – 217505

S/CARLOS HERNÁNDEZ BURGOS
USDC-PR - 224814


**REICHARD &  ESCALERA**
Legal counsel for
CompCare de Puerto Rico, Inc.
MCS Plaza, Suite 10
255 Ponce de León Ave
Hato Rey, San Juan PR  00917
PO Box 364148,
San Juan, PR  00936-4148
Tel. (787) 777-8888; Fax: 765-4225
e-mail: santiagop@reichardescalera.com
e-mail: annexy@reichardescalera.com
e-mail: hernandezc@reichardescalera.com